UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY BURTON,

                    Plaintiff,                  Case No. 20-11948

v.                                     Paul D. Borman
                                     United States District Judge

RONALD SANDERS, DETROIT
POLICE DEPARTMENT, and CITY OF
DETROIT,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS CITY OF DETROIT AND DETROIT POLICE DEPARTMENT'S MOTION TO DISMISS IN LIEU OF AN ANSWER (ECF NO. 4)

This action arises out of Plaintiff Danny Burton's September 14, 1987 conviction for First-Degree Murder and Felony Firearm. According to the Complaint, each witness who testified against Plaintiff has since recanted their trial testimony, and states that he or she gave false testimony at trial due to intimidation by former Detroit Police Officer Ronald Sanders. Plaintiff's conviction was subsequently vacated on December 6, 2019, and he brings this action against Defendants Ronald Sanders, City of Detroit, and Detroit Police Department pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of his constitutional rights under the

1

Fourth, Fifth, Sixth and Fourteenth Amendments. Now before the Court is Defendants City of Detroit and Detroit Police Department's Motion to Dismiss in Lieu of an Answer (ECF No. 4.) The motion is fully briefed. The Court held a hearing using Zoom videoconference technology on January 12, 2021, at which counsel for Plaintiff and Defendants appeared. For the reasons that follow, the Court GRANTS Defendants City of Detroit and Detroit Police Department's Motion to Dismiss in Lieu of an Answer.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Complaint (ECF No. 1)

Plaintiff Danny Burton was convicted for the murder of Leonard Ruffin on September 14, 1987, "[a]fter a five-day jury trial in the Wayne County Circuit Court on a charge of first-degree murder, MCL 750.316, and felony firearm, MCL 750.227(b), … and sentenced to life in prison without the possibility of parole." (ECF No. 1, Complaint ("Compl."), ¶¶ 9, 10, PgID 3.) According to Plaintiff's Complaint, "[t]he case against Mr. Burton was built primarily upon witness statements of individuals who resided or were present at the home where the shooting [of Mr. Ruffin] occurred," and "[a]ll of the witnesses who testified at Mr. Burton's trial have now provided affidavits recanting their trial testimony and stating that they gave false statements at trial because of threats and intimidation by

2

Defendant [Ronald] Sanders," a Detective with the Detroit Police Department. (*Id.*
¶¶ 6, 11-12, PgID 2-3.) "Mr. Burton's conviction was subsequently vacated on
December 6, 2019." (*Id.* ¶ 13, PgID 3.)

On July 20, 2020, Plaintiff brought this action against Defendants Ronald
Sanders, City of Detroit, and Detroit Police Department, asserting that the
Defendants violated his constitutional rights pursuant to 42 U.S.C. §§ 1983 and
1988, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States
Constitution. (Compl.) Plaintiff asserts claims against Defendant Sanders for *Brady*
violations, malicious prosecution, and fabrication of evidence, and against
Defendants City of Detroit and Detroit Police Department for *Monell* liability for
creating policies, practices and customs, including failure to provide adequate
training to police officers, that violated Plaintiff's constitutional rights based on
fabrication and withholding of evidence, and the right not to be seized or detained
without probable cause. (*Id.* Count I.A – D., PgID 10-14.)

**B.     Defendants City of Detroit and Detroit Police Department's Motion
to Dismiss (ECF No. 4)**

On August 31, 2020, Defendants City of Detroit and the Detroit Police
Department filed their Motion to Dismiss in Lieu of an Answer. (ECF No. 4, Defs.'

3

Mot.)[1] Defendants argue that the Detroit Police Department should be dismissed because it is a municipal department of the City of Detroit and not an entity capable of being sued under Michigan law. (*Id.* at pp. 10-12, PgID 69-71.) Defendants argue that Plaintiff's claims against the City of Detroit are barred by Plaintiff's acceptance of compensation under Michigan's Wrongful Incarceration Compensation Act ("WICA"), Mich. Comp. Laws § 691-1751, *et seq.* (*Id.* at pp. 12-13, PgID 71-72.) Finally, Defendants contend that Plaintiff's claims against the City of Detroit are barred by the City's Chapter 9 bankruptcy, which was confirmed on November 12, 2014, relying on *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018) (Lawson, J.). (*Id.* at pp. 13-14, PgID 72-73.)

On September 21, 2020, Plaintiff filed a response in opposition to Defendants' motion to dismiss. (ECF No. 8, Pl.'s Resp.) Plaintiff contends that the statutory prohibition on claims against the City in Michigan's WICA violates the Supremacy Clause and is preempted by Federal law. (*Id.* at pp. 3-6, PgID 118-21.) Plaintiff also argues that the City of Detroit's bankruptcy does not bar Plaintiff's claims against the City. (*Id.* pp. 6-9, PgID 121-24.) Plaintiff concedes that the Detroit Police Department is not "the suable entity in this instance." (*Id.* at p. 6 fn.1, PgID 121.)

---

[1] Defendant Sanders filed an answer to Plaintiff's Complaint on October 19, 2020. (ECF No. 9.)

Defendants did not timely file a reply brief. Instead, on October 28, 2020, Defendants filed a motion for leave to file a supplemental brief, seeking leave to file a six-page supplemental brief in support of their motion to dismiss, and Defendants also filed their Supplemental Brief at that same time. (ECF Nos. 10, 11.) The Court granted Defendants' motion, accepted Defendants' Supplemental Brief as filed (ECF No. 11, Defs.' Supp. Brief), and permitted Plaintiff to file a response brief up to six pages in length and limited to those issues addressed in the Supplemental Brief. (ECF No. 12.) Plaintiff did not file a response.

In their Supplemental Brief, Defendants again argue that Plaintiff's claims against the City related to his alleged wrongful conviction, are barred and discharged by the City's bankruptcy, relying on *Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306, at *8-10 (E.D. Mich. Mar. 6, 2019) (Michelson, J.) (Defs.' Supp. Brief.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and

conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is

the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the

pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

## III.  ANALYSIS

### A.     Plaintiff's Claims Against Defendant Detroit Police Department

Defendants argue that Plaintiff's claims against Defendant Detroit Police Department should be dismissed because the Detroit Police Department is a municipal department of the City of Detroit and thus is not a legal entity amenable to suit. (Defs.' Mot. at pp. 10-12, PgID 69-71.) Plaintiff now concedes this. (Pl.'s Resp. at p. 6 fn. 1, PgID 121.) It is well settled that "city departments [such as the Detroit Police Department] are not separate legal entities against which a suit can be directed." *McGrew v. Duncan*, 333 F. Supp. 3d 730, 744 (E.D. Mich. 2018) (dismissing claims against the Detroit Police Department because it is not a legal entity amenable to lawsuit) (citing *Laise v. City of Utica*, 970 F. Supp. 605, 608

(E.D. Mich. 1997); *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 637 (E.D. Mich. 1996); *Michonski v. City of Detroit*, 162 Mich. App. 485, 490 (1987); *Davis v. Chrysler Corp.*, 151 Mich. App. 463, 467 (1986)); *see also Boykin v. Van Burn Twp.*, 479 F.3d 444, 450 (6th Cir. 2008) (noting that a police department is merely an agency of the city and not a proper defendant in a § 1983 lawsuit). The Court therefore grants Defendants' motion and dismisses the Detroit Police Department as a defendant in this case.

### B.    Plaintiff's Claims Against Defendant City of Detroit

In 2013, the City of Detroit filed for protection under Chapter 9 of the Bankruptcy Code. The bankruptcy court set a date of February 4, 2014, for filing a proof of claim against the City. Defendants contend that Plaintiff's present claims against the City of Detroit in this case are barred by the discharge that resulted from the approval of the City's final plan of adjustment, which was confirmed on November 12, 2014, relying on *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342 (E.D. Mich. Dec. 4, 2018). (Defs.' Mot. at pp. 13-14, PgID 72-73.) Defendants argue that Plaintiff maintained his innocence and filed several post-judgment motions and appeals following his conviction, and consulted with various attorneys regarding post-conviction relief prior to the Bar date, yet it is undisputed

that Plaintiff did not file a proof of claim in the bankruptcy matter prior to the Bar date. (*Id.*)

Plaintiff argues in response that the City's bankruptcy does not bar his claims against the City. (Pl.'s Resp. at pp. 6-9, PgID 121-24.) Plaintiff acknowledges that "most courts to have decided the issue have ruled that a claim that has not accrued under non-bankruptcy law may still be barred as a prepetition claim," but contends that bankruptcy law distinguishes between known and unknown creditors. (*Id.* at pp. 6-7, PgID 121-22.) He argues that he made "multiple attempts to overturn his conviction" and his "innocence and subsequent malicious prosecution claim[s] were readily ascertainable through reasonably diligent efforts," and that to the extent he was a "known creditor," he did not receive "actual notice" of the bankruptcy. (*Id.* at p. 8, PgID 123.) He argues, alternatively, to the extent he is ruled an "unknown creditor," that the constructive notice procedures were inadequate to place him on notice of the bankruptcy because he was incarcerated, "coupled with the Michigan Department of Corrections history of censoring incoming news about matters of prisoners' rights and interests," which "shows that publication is insufficient to put prisoners on constructive notice to file claims against the City before the bar date." (*Id.*) Finally, Plaintiff contends that his failure to file by the bankruptcy bar date qualifies as excusable neglect because he was not exonerated until December 6,

10

2019. (*Id.* at p. 9, PgID 124, citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).)

In their Supplemental Brief, Defendants contend that "Plaintiff's acknowledgment in his response that he made multiple attempts to overturn his conviction and that he should have been a known creditor during the City's bankruptcy case demonstrates that his claim was within his fair contemplation." (Defs.' Supp. Brief at p. 1, PgID 142.) Defendants assert that the facts of this case are similar to those in *Monson v. City of Detroit*, No. 18-10638, 2019 WL 1057306 (E.D. Mich. Mar. 6, 2019), in which the Court held that the plaintiff's claims related to his alleged wrongful conviction were barred and discharged by the City's bankruptcy case. *Id.* at *8-10 (citing *Sanford*, 2018 WL 6331342).

This Court finds that Plaintiff's claims against the City of Detroit are barred and discharged by the City's Chapter 9 bankruptcy. Plaintiff's claims stem from his 1987 arrest and conviction. The City of Detroit filed for Chapter 9 bankruptcy in 2013, and the bankruptcy court set a date in February 2014 for filing a proof of claim against the City. It is undisputed that Plaintiff never filed a proof of claim in the bankruptcy proceeding. The City's plan of adjustment became final on December 10, 2014, *see In re City of Detroit, Michigan*, 548 B.R. 748, 751 (Bankr. E.D. Mich. 2016), and once that happened, the City discharged its liability on prepetition claims.

11

Thus, claimants seeking damages from the City based on claims that can be characterized as prepetition claims "are enjoined from pursuing a recovery beyond what is provided for in the Plan [of Adjustment]." *In re City of Detroit, Michigan*, 548 B.R. at 751; *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of a process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived….").

The Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Congress intended the broad language defining a "claim" to capture "'all legal obligations of the debtor, no matter how remote or contingent,'" *In re City of Detroit*, 548 B.R. at 751 (citations omitted). When determining whether a creditor's claim arose before a bankruptcy petition was filed, the Sixth Circuit uses the "fair contemplation test," under which "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not accrued under non-bankruptcy law." *See Sanford v. City of Detroit*, No. 17-13062,

12

2018 WL 6331342, at *5 (E.D. Mich. Dec. 4, 2018) (citing, in part, *In re City of Detroit*, 548 B.R. at 761 (collecting cases)).

As Defendants argue, and as Plaintiff concedes in his Response, Plaintiff maintained his innocence and filed several post-judgment motions and appeals following his conviction in 1987, and he consulted with various attorneys regarding post-conviction relief to overturn his conviction. (See Defs.' Mot. at p. 14, PgID 73, citing Exs. D & E, ECF Nos. 4-7, Wayne County Circuit Court Register of Actions, & 4-8, Michigan Appellate Register of Actions) (Pl.'s Resp. at p. 8 ("Here, Mr. Burton's innocence and subsequent malicious prosecution claim were readily ascertainable through reasonably diligent efforts. Mr. Burton made multiple attempts to overturn his conviction.").) Thus, Plaintiff did not neglect his claims and the eventual invalidation of his conviction and his claims against the City were within his "fair contemplation" before the City declared bankruptcy, and therefore are barred by the City's bankruptcy. *See Sanford*, 2018 WL 6331342, at *5-6 (finding plaintiff's claims within his "fair contemplation" and barred by the City's bankruptcy "since he attempted repeatedly to argue actual innocence before the state courts since at least 2008," even though he could not file suit on his claims until his criminal conviction was overturned); *see also Monson*, 2019 WL 1057306, at *8 (finding Monson's claims within his "fair contemplation" before the city entered

13

Chapter 9 bankruptcy because he was trying to overturn his conviction prior to the bankruptcy using both state and federal collateral appeals). Courts have "uniformly … concluded that claims based on prepetition malicious prosecutions were barred, notwithstanding that the plaintiff could not file suit on his claims until his criminal conviction was overturned." *Sanford*, 2018 WL 6331342, at *5-6 (citations omitted).

Plaintiff argues that he did not receive proper notice of the bankruptcy. (Pl.'s Resp. at pp. 8-9, PgID 123-24.) He contends that "[i]f the Court determined [he] was a known creditor at the time of the City's bankruptcy," he did not receive actual notice, and "should the court rule that [he] is an unknown creditor, the constructive notice procedures used in Detroit's bankruptcy were lacking and inadequate." (*Id.*) The court in *Monson* looked at this same argument and found that the plaintiff's "unaccrued claims more closely resembled the claims of an unknown creditor." *Monson*, 2019 WL 1057306, at *9-10. The *Monson* court found that the plaintiff's Heck-barred claims, while "broadly speaking, foreseeable," were not readily ascertainable to the City because "neither Monson nor his lawyers … provided anything to the City that amounted to a demand for payment or a communication concerning the existence of his future claim." *Id.* "An unknown creditor is 'a claimant whose identity is not "reasonably ascertainable" or is merely "conceivable, conjectural or speculative."'" *Id.* at *10 (citations omitted). This Court finds, like in

14

*Monson*, that Plaintiff was an "unknown creditor" at the time of the City's bankruptcy and thus was entitled only to constructive notice of the bankruptcy.

Plaintiff's "challenge" to the constructive notice procedures applicable to "unknown creditors" used in the bankruptcy does not succeed. Plaintiff contends his imprisonment "coupled with the Michigan Department of Corrections history of censoring incoming news about matters of prisoners' rights and interests" show that publication is insufficient to put prisoners on constructive notice to file claims against the City before the Bar date. (Pl.'s Resp. at p. 8, PgID 123.) However, as Defendants point out, the Confirmation Order provided:

> Pursuant to Bankruptcy Rule 2002(f), the City shall publish the Bar Date Notice, once, in the Detroit Free Press, The Detroit News and national editions of USA Today and The Wall Street Journal at least 28 days prior to the General Bar Date, which publication is hereby approved ***and shall be deemed good, adequate and sufficient publication notice of the Bar Dates***. The City is authorized to modify the Bar Date Notice to the extent necessary or appropriate to conform the Bar Date Notice to publication and minimize expense.

(Defs.' Supp. Brief at p. 5, PgID 146, citing Ex. H, Order Approving Form and Manner of Notice, ¶ 26, PgID 405 (emphasis added).) The Confirmation Order found that the notice provided was proper and that all persons entitled to receive notice had an opportunity to appear and be heard. (*Id.*, citing Ex. F, Confirmation Order, ¶¶ k, l, PgID 167-68.)

15

Plaintiff's reliance on *Human Rights Defense Center v. Winn*, 431 F. Supp. 3d 925 (E.D. Mich. 2020), is misplaced. That case involved claims of alleged censorship involving the plaintiff publisher's magazines and materials relating to inmate prison litigation subject matter, and challenged an MDOC policy prohibiting "'mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner.'" *Human Rights Defense Ctr.*, 431 F. Supp. 3d  at 931. Thus, that case focused on the plaintiff's prison litigation publications, and not general censorship of incoming materials or publications. *See id.* There has been no showing that the MDOC policy has been applied to publications such as The Detroit Free Press, The Detroit News, and national editions of USA Today and The Wall Street Journal, as outlined in the Bankruptcy Court's Order Approving Form and Manner of Notice, or that the bankruptcy publications otherwise fail to provide sufficient notice to incarcerated individuals. The Court finds that Plaintiff received adequate constructive notice of the bankruptcy bar date, and therefore his claims against the City are barred by the City's Chapter 9 bankruptcy.

Finally, Plaintiff claims that his failure to file by the bar date "qualifies as excusable neglect," because he was not exonerated until December 6, 2019, and he claims that there would be minimal prejudice to the City. (Pl.'s Resp. at p. 9, PgID

124.) Plaintiff argues that the factors discussed in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), weigh in favor of allowing his claim against the City of Detroit to proceed. (*Id.*) However, the Court finds that *Pioneer* does not support of finding of excusable neglect in this case. In *Pioneer*, the Supreme Court found that "the unusual form of notice [of the bar date] employed in th[at] case requires a finding that the neglect of respondent's counsel [in filing a proof of claim 20 days after the bar date] was, under all the circumstances, 'excusable.'" *Pioneer*, 507 U.S. at 398-99 (noting that the "'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting,' without any indication of the significance of the bar date, left a 'dramatic ambiguity' in the notification"). The Supreme Court further relied on the absence of any prejudice to the debtor or to the interests of efficient judicial administration, noting that the Bankruptcy Court took judicial notice of the fact that the debtor's second amended plan of reorganization took account of respondents' claims. *Pioneer*, 507 U.S. at 397-98.

Here, Plaintiff asks the Court to excuse an almost six year delay in filing a claim, in a bankruptcy with a proper notice of the bar date, and with prejudice to the debtor. While his exoneration is "recent," Plaintiff has robustly challenged his conviction since 1987. The Court finds that Plaintiff did not "neglect" his claims but

instead has repeatedly asserted actual innocence and attempted to overturn his conviction since 1987. Moreover, basing "excusable neglect" solely on the fact of imprisonment would apply to every incarcerated individual, and as shown above, Courts in this District have readily found that such persons have "fair contemplation" of their prepetition claims, which are barred by the Chapter 9 bankruptcy. *See Monson* and *Sanford, supra.*

Further, Plaintiff's argument that the City of Detroit will not suffer any prejudice if the Court excuses Plaintiff's failure to file before the bar date and allows his claim against the City to proceed because the City is already "on the hook" for any damages assessed against Defendant Sanders also fails. Counsel for the City represented at the hearing that the City, or more aptly the Detroit City Council, has not yet decided whether the City will represent and indemnify Defendant Sanders for any claims asserted against him. Thus, there certainly could be substantial prejudice to the City if it remains a defendant in this lawsuit. In addition, the *Monell* claims asserted in the Complaint against the City, based on alleged unlawful policies or procedures, are different than those claims asserted against Defendant Sanders, and would require different evidence and proofs in many respects. Accordingly, the Court rejects Plaintiff's claims of excusable neglect and no prejudice to the debtor/Defendant City of Detroit.

18

The Court therefore grants Defendants' motion and dismisses the City of Detroit as a defendant in this action.[2]

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants City of Detroit and Detroit Police Department's Motion to Dismiss in Lieu of an Answer. (ECF No. 4), and **DISMISSES** Defendants City of Detroit and Detroit Police Department **WITH PREJUDICE**.

This Opinion and Order does not resolve all pending claims and does not close this case.

IT IS SO ORDERED.


Dated: January 19, 2021                          s/Paul D. Borman
                                                 Paul D. Borman
                                                 United States District Judge

---

[2] Defendants also argue in their motion to dismiss that Plaintiff's acceptance of compensation under Michigan's Wrongful Imprisonment Compensation Act ("WICA"), Mich. Comp. Laws § 691-1751 *et seq.*, constitutes a complete release of his claims against the State of Michigan and its political subdivisions, including the City of Detroit. (Defs.' Mot. at pp. 12-13, PgID 71-72.). Plaintiff argues in response that the statutory prohibition on claims against a city in Michigan's WICA violates the Supremacy Clause and is preempted by federal law. (Pl.'s Resp. at pp. 3-6, PgID 118-21.) The Court does not decide this issue because, as discussed above, it finds that Plaintiff's claims against the City of Detroit are barred by its bankruptcy.

19