## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANNY BURTON,

      Plaintiff,

v.

RONALD SANDERS, DETROIT
POLICE DEPARTMENT, and CITY
OF DETROIT,

      Defendants.

Case No. 2:20-cv-11948

Hon. Paul D. Borman

Magistrate Judge David R. Grand

---

## RESPONSE TO DEFENDANT RONALD SANDERS' MOTION TO SHOW CAUSE AND MOTION TO QUASH THE SUBPOENA IN PART BY <u>NON-PARTY THE WAYNE COUNTY PROSECUTOR'S OFFICE</u>

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Under Fed. R. Civ. P. 45(d)(3), did non-party the Wayne County Prosecutor's Office properly withhold materials protected by the attorney opinion work product doctrine in response to a subpoena sent by Defendant Ronald Sanders?

2.   Is there any merit to Defendant's claims that the WCPO did not turn over the factual material in its possession and control?

## CONTROLLING OR MOST APPLICABLE AUTHORITY

*ACLU of Northern California v. United States DOJ*, 880 F.3d 473 (9th Cir. 2018).

*American Oversight v. United States DOJ*, 45 F.4th 579 (2d Cir. 2022).

*Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304 (D.C. Cir. 1997)

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010).

*Hickman v. Taylor*, 329 U.S. 495 (1947).

*In Re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002).

*In re King's Daughters Health Sys.*, 31 F.4th 520 (6th Cir. 2022).

*Nat'l Ass'n of Criminal Defense Lawyers v. United States DOJ Exec. Office for United States Attorneys*, 844 F.3d 246 (D.C. Cir. 2016).

*Thompson v. Clark*, 142 S. Ct. 1332 (2022).

*United States v. Nobles*, 422 U.S. 225 (1975).

Fed. R. Civ. P. 45.

Fed. R. Evid. 502

Mich. R. Prof. Conduct 3.8.

## INTRODUCTION

The present motion filed by Defendant Ronald Sanders ("Defendant") is the fifth of five motions, filed in the span of about 45 days in five different cases pending in the United States District Court for the Eastern District of Michigan,[1] by Detroit police officers named as defendants in civil wrongful conviction cases brought under 42 U.S.C. § 1983, seeking discovery of protected attorney opinion work product generated by the Wayne County Prosecutor's Office (the "WCPO") in connection with the state court criminal cases of the plaintiffs.  As explained below, the attorney opinion work product rule incorporated into Fed. R. Civ. P. 45(d)(3) shields these materials from disclosure.

So far, four of the five motions have been fully briefed; two of these motions have been heard; and one has been decided. On September 19, 2022, Magistrate Judge Patti in the *Larry Smith* case denied the police officer defendants' motion to compel the discovery, ruling that work product and deliberative process privileges applied to the materials and quashing in relevant part defendants' subpoena to the WCPO.  (Exhibit 1, 9/16/22 Hrg. Tr.; Exhibit 2, 9/19/22 Order).  After holding a

---

[1] The other four cases are: (1) *Howard v. Collins, et al.*, No. 21-12036 (E.D. Mich. filed Sept. 1, 2021) (Goldsmith, J.); (2) *Smith v. Wayne County, et al.*, No. 21-12070 (E.D. Mich. filed Sept. 3, 2021) (Lawson, J.); (3) *Ward v. Wayne County, et al.*, No. 21-12742 (E.D. Mich. filed Nov. 24, 2021) (Borman, J.); and (4) *Cotton, et al. v. Hughes, et al.*, No. 22-10037 (E.D. Mich. filed Jan. 6, 2022) (Levy, J.).  The next scheduled motion hearing in these cases is set for October 26, 2022, before Magistrate Judge Stafford in the *Ward* case, which is also before the Court.

1

hearing on September 20, 2022, Magistrate Judge Grand in the *Marvin Cotton* case took under advisement the police officers defendants' motion pending requested supplemental briefing to be completed by October 11, 2022, including an *amici* brief in support of the WCPO's legal position by three other Michigan county prosecutor offices (Macomb, Oakland & Washtenaw) and the Department of the Michigan Attorney General.

Despite non-party the WCPO's production of a significant amount of material in response, including subsequent supplements, to the November 2020 subpoena – including the factual, non-protected material in its possession (e.g., audio interviews, court files, third party correspondence, a redacted version of its internal legal memo, police investigatory files, etc.), Defendant nevertheless insists, without a legal or factual basis, that: (1) prosecutors enjoy no opinion work product protections when conducting a legal analysis of the integrity of a criminal conviction; (2) the WCPO has entirely "waived" any work product protections in this case; and (3) he suspects that there may be additional non-protected factual materials that have not been produced.  As explained below, because none of Defendant's contentions have merit, the Court should deny the motion to show cause and/or alternatively quash the subpoena in part.

# RELEVANT FACTS

**A.    1987-2019: Plaintiff's State Court Criminal Proceedings and Post-Trial Developments.**

On May 2, 1987, Mr. Lenny Ruffin was murdered by gunfire in an apparent drug-related incident in Detroit, Michigan. The subsequent Detroit Police Department investigation resulted in the identification of three individuals believed to have been involved in the shooting – Dave Owens as the shooter and Plaintiff and Paul Young as likely aiders and abettors. During August 1987, Detroit Recorders Court conducted a jury trial that jointly tried both Plaintiff and Mr. Young on the charges of first-degree murder and weapons charges, resulting in their convictions. (Exhibit 3, State Court Docket). On September 14, 1987, Plaintiff was sentenced to life in prison without the possibility of parole. (*Id*.). On November 29, 1989, on direct appeal, the Michigan Court of Appeals affirmed the conviction. On September 28, 1990, the Michigan Supreme Court denied his application for leave to appeal. *See People v. Burton*, No. 88024, 1990 Mich. LEXIS 2607 (Mich. 1990).

During early 2018, an attorney named Solomon Radner requested that the WCPO Conviction Integrity Unit (the "CIU") review the integrity of Plaintiff's conviction because of alleged newly-discovered evidence and witness statements uncovered after the 1987 criminal conviction and provided the draft of a Rule 6.500 motion he planned on filing in the Wayne County Circuit Court. (Exhibit 4, Newman Decl. ¶ 2). The WCPO agreed to review the matter, and an investigation

3

was conducted, concluding during early December 2019.  (*Id.* ¶ 3).   At the conclusion of the investigation, WCPO staff prepared an internal memorandum detailing the facts of the case as well as legal analysis pertaining to the integrity of Plaintiff's conviction.  (*Id.* ¶ 4).

On December 6, 2019, upon the stipulation of the parties to the criminal case, the Wayne County Circuit Court entered an order vacating Plaintiff's conviction. (Exhibit 5, 12/6/19 State Court Order).

**B.    July 2020: Plaintiff Files the Present Lawsuit.**

On or about June 20, 2020, Plaintiff filed the present § 1983 lawsuit asserting that during 1987 Defendant threatened and intimidated witnesses to provide false testimony at the criminal trial and then failed to comply with their *Brady* obligations. (ECF No. 1).   Plaintiff claims that Defendant's 1987 wrongdoing and failure to disclose relevant *Brady* material resulted in his convictions for first-degree murder and felony firearm.

**C.    November 2020 – August 2022:  Defendant's Subpoena to the WCPO.**

In a subpoena dated November 3, 2020, Defendant sought from the WCPO "all records related to Wayne County Case No. 87-005562-01-FC, including but not limited to, records retained by the conviction integrity unit."  (ECF No. 22-3).  On December 23, 2020, the WCPO responded to the subpoena, producing a substantial

amount of material.  (Exhibit 6, 12/23/20 Correspondence).  Defendant provided no subsequent indication to the WCPO that the subpoena response was insufficient.

More than a year later, on February 8, 2022, counsel for Defendant directly contacted the WCPO CIU Director, Ms. Valerie Newman to "talk about the case" and to "schedule her deposition."  (Exhibit 7, 2/8/22 Correspondence).  The next day the Wayne County Corporation Counsel responded, directing counsel for Defendant to contact it instead of Wayne County employees directly.

To make a long story short, in subsequent numerous emails and phone calls, Defendant insisted that the WCPO supplement its production with some items that had not been produced, namely: (1) all attorney work product withheld; (2) third-party correspondence; and (3) other miscellaneous materials that Defendant assumed might be in the WCPO's possession and control.[2]  To attempt to amicably resolve these issues, on April 18, 2022, the WCPO produced a redacted version of its legal memorandum to Defendant.  (Exhibit 8, 4/18/22 Correspondence).  On July 25, 2022, the WCPO produced the third-party correspondence in its files.  (Exhibit 9, 7/25/22 Correspondence).

On the question of the "representation" of Ms. Newman, Defendant's claims that the WCPO has somehow "misled" or "confused" him about the scope of that

---

[2] These existence and production of these materials are addressed blow.

representation are not accurate.[3] Without belaboring the point, the WCPO clearly communicated three concepts to counsel for Defendant on multiple occasions by email and by phone: (1) pursuant to Rule 45, the WCPO's obligation in response to a subpoena is to produce records that exist and are in its possession; (2) counsel for the WCPO are not Ms. Newman's personal attorneys for matters that predate her employment with Wayne County; and (3) requests for records thought to be in Ms. Newman's exclusive possession, and not in the WCPO's possession, should be directed to her. Despite Defendant's attempts to inflate this issue to the Court now, this is all now moot as he subsequently directly sought from Ms. Newman items that either relate to her prior employment or work and/or may be in her exclusive custody and control; and she has not resisted on the basis that the request for those records should have been directed to the WCPO.

To the extent that Defendant seeks protected opinion work product and insists that non-work product has not been turned over (or that the WCPO has somehow expressly refused to turn over non-protected information), neither of these claims have merit.

---

[3] Although Defendant's motion references an "Exhibit 25," there is no Exhibit 25.

## ARGUMENT

**A.   Under Fed. R. Civ. P. 45(d)(3), the Unredacted Legal Memorandum and Other Materials Were Properly Withheld Pursuant to the Opinion Work Product Doctrine.**

Prevailing federal law recognizes that: (1) the work product doctrine applies to prosecutors engaged in work on criminal cases; and (2) Fed. R. Civ. 45(d)(3) shields from disclosure the opinion work product of non-parties to parties involved in civil litigation. Defendants' arguments to the contrary lack merit.

1.   <u>The Opinion Work Product Doctrine Applies to Prosecutors Engaging in Work on Criminal Cases.</u>

As recognized by the United States Supreme Court, work product is generally protected from discovery in litigation so that an attorney can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).   An attorney's work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible ways[.]" *Id*. at 511.  The Supreme Court has long recognized that the work product doctrine applies in the criminal

context and to a prosecutor's work on a matter.[4] *See United States v. Nobles*, 422

U.S. 225, 238 (1975) ("Although the work-product doctrine most frequently is

asserted as a bar to discovery in civil litigation, its role in assuring the proper

functioning of the criminal justice system is even more vital. The interests of society

and the accused in obtaining a fair and accurate resolution of the question of guilt or

innocence demand that adequate safeguards assure the thorough preparation and

presentation of each side of the case"); *see also ACLU of Northern California v.*

*United States DOJ*, 880 F.3d 473, 483 n. 7 (9th Cir. 2018) ("The attorney work-

---

[4] Although it appears the federal law governing the disclosure of work product would apply in this situation, it should be noted that Michigan has a strong policy of protecting prosecutor work product from disclosure in civil litigation and under the Freedom of Information Act. *See, e.g., People v. Gilmore*, 564 N.W.2d 158, 164 (Mich. Ct. App. 1997) ("On the basis of the public policy principles underlying the work-product privilege, pre-MCR 6.201 criminal cases applying the work-product privilege, and the language of MCR 6.201(C) recognizing the continued applicability of privileges, we conclude that the work-product privilege applies in the context of criminal proceedings to the work product of the prosecutor"); *Messenger v. Ingham County Prosecutor*, 591 N.W.2d 393, 396-97 (Mich. Ct. App. 1998) ("The rule guarding attorney work product from civil discovery applies equally to the prosecutor's work product, whether in conjunction with representing the people of the state in criminal proceedings, as chief legal representatives of their respective counties in all civil and criminal matters, or as the state's agent for effectuation of the obligations *of parens patriae* in matters concerning the custody or welfare of children"); *King v. Oakland County Prosecutor's Office*, No. 314779, 2014 Mich. App. LEXIS 1418, *9-10 (Mich. Ct. App. July 31, 2014) (unpublished) (holding that the work product privilege barred a plaintiff's requests for materials relating a prosecutor's decision not to charge certain individuals in a murder case); *People v. Lemoine*, No. 336691, 2018 Mich. App. LEXIS 2829, *12-16 (Mich. Ct. App. July 17, 2018) (unpublished) (affirming the trial court's decision under the work product doctrine to deny a request for a prosecutor's file to determine why a person was not charged in a crime).

product privilege also applies in criminal proceedings"); *Nat'l Ass'n of Criminal Defense Lawyers v. United States DOJ Exec. Office for United States Attorneys*, 844 F.3d 246, 250 (D.C. Cir. 2016) ("The attorney work-product privilege applies in both civil and criminal cases"); *American Oversight v. United States DOJ*, 45 F.4th 579 (2d Cir. 2022) (holding that the attorney work product doctrine shielded from disclosure of certain information created by federal prosecutors in the course of investigating whether to seek criminal charges).

While Rule 26(b)(3) recognizes the existence of the work product privilege, *see, e.g., South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 405 (6th Cir. 2019) (unpublished), the Rule normally only applies to the parties to the litigation.  However, Rule 45(d)(3)(A)(iii) expressly permits a non-party to resist responding to a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Although neither the Supreme Court nor the Sixth Circuit has directly addressed the subject, numerous courts have concluded: (1) that Rule 45(d)(3) incorporates the work product doctrine; and (2) shields prosecutors from subpoenas in civil litigation that seek their "opinion work product" connected to their efforts in a criminal matter. *See, e.g., Lawrence v. Madison County*, No. 13-383, 2015 U.S. Dist. LEXIS 194455, *8 (E.D. Ky. Feb. 23, 2015) (unpublished) (holding that despite Rule 26(b)(3) not technically applying to third parties, the work product doctrine would shield from discovery materials that

would reveal a prosecutor's opinion work product); *Schomburg v. Bologna*, 298 F.R.D. 138, 142-43 (S.D.N.Y. 2014)  (same); *Washington v. Follin*, No. 14-00416, 2016 U.S. Dist. LEXIS 54030, *44-53 (D.S.C. Apr. 22, 2016) (unpublished) (same and recognizing that "Prosecutors have a legitimate expectation that they can develop legal theories and strategies, as well as communicate with law enforcement about pending criminal investigations. Subjecting a prosecutor's work product to unbridled discovery in a civil action would inevitably curtail the prosecutor's willingness to memorialize her thoughts and opinions on paper"); *Charron v. County of York*, No. 18-00105, 2019 U.S. Dist. LEXIS 29160, *5-6 (D. Me. Feb. 24, 2019) (unpublished) (holding that despite Rule 26(b)(3) not technically applying to non-parties, the non-party prosecutor could resist complying with the subpoena under work product protections recognized by Fed. R. Civ. P. 45); *Vaughan v. City of Shaker Heights*, No. 10-609, 2013 U.S. Dist. LEXIS 126094, *21 (N.D. Ohio Sept. 4, 2013) (unpublished) (quashing in part under Rule 45 a subpoena in a civil case to a prosecutor to the extent that it sought protected opinion work product); *Nice v. City of Akron*, No. 18-1565, 2019 U.S. Dist. LEXIS 214196, *5-14 (N.D. Ohio Dec. 12, 2019) (unpublished) (recognizing that a non-party can claim work product protections in response to a subpoena under Rule 45).

While the case law suggests that a party to civil litigation may be entitled to "fact work product" upon the demonstration of a "substantial need," "opinion work

product" is "virtually undiscoverable." *See United States Fire Ins. Co. v. City of Warren*, No. 10-13128, 2012 U.S. Dist. LEXIS 82625, *11 (E.D. Mich. June 14, 2012) (unpublished); *see also Hickman*, 329 U.S. at 510 ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney") (citation omitted); *In Re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) ("[A]bsent waiver, a party may not obtain the opinion work product of his adversary; i.e., any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories") (citation and quotation marks omitted); *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("A party can discover fact work product upon a showing of substantial need for the materials and undue hardship in acquiring the information any other way. Opinion work product, on the other hand, is virtually undiscoverable"); *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) ("Opinion work product, by contrast, enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances") (citation and quotation marks omitted).

Moreover, in the specific context of a prosecutor's review of the integrity of a prior criminal conviction, in addition to Magistrate Judge Patti in his recent September 19, 2022 Order (Exhibits 1 & 2), other courts have found that work product protections apply to a prosecutor's "mental impressions, opinions,

conclusions, judgments, and legal theories" in performing that work. *See Chestnut v. Kincaid*, No. 20-2342, 2021 U.S. Dist. LEXIS 236600, *2-5 (D. Md. Dec. 9, 2021) (unpublished) (holding that the work product doctrine shielded a prosecutor's disclosure of opinion work product contained in a memorandum prepared in reviewing the integrity of the plaintiff's prior criminal conviction); *Johnson v. Baltimore Police Dep't*, No. 19-698 (D. Md. Apr. 9, 2021) (holding that portions of an internal memorandum authored by the attorney general's conviction integrity unit regarding "newly-discovered evidence" in a concluded criminal matter constituted protected opinion work product) (Exhibit 10).

Here, the materials withheld from the subpoena response – namely the unredacted version of the internal legal memoranda, internal correspondence within the WCPO, and other materials – constitute and contain opinion work product protected from disclosure by Rule 45.

Defendant has cited no binding or persuasive case law that supports its legal position that attorney opinion work product is not protected under these circumstances or that his request falls into any recognized exception to the work product doctrine.[5] Moreover, as explained above, as a matter of law, there is no

---

[5] The two district court cases from within the Sixth Circuit cited by Defendant do not represent any kind of majority view and similarly do not discuss the independent protections contained Rule 45 that operate independently from Rule 26. *See Kirk v. Calhoun County*, No. 17-589, 2018 U.S. Dist. LEXIS 243265 (W.D. Mich. June 27, 2018) (unpublished) (analyzing the prosecutor work product issue under Rule 26

"substantial need" or "hardship" exception to the attorney opinion work product protections.   Therefore, because the materials withheld constitute "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs," *Hickman*, 329 U.S. at 511, and because Defendant does not assert that any recognized exceptions to the opinion work product doctrine apply, the withheld materials are protected from disclosure under Rule 45.

2.   The WCPO's Opinion Work Product Was Prepared "In Anticipation of Litigation."

On this point, Defendant asserts several claims which do not appear to be true as a matter of law or fact, namely: (1) attorney opinion work product only applies to actual or prospective "civil" litigation against the preparer; and (2) the WCPO "withheld" documents on the basis that they were generated after the criminal proceedings.

First, to accept Defendant's position would ignore binding Supreme Court and other authority that the attorney work product doctrine applies to prosecutors in their work on criminal matters.   *See, e.g., Nobles,* 422 U.S. at 238; *ACLU of Northern*

---

without mention of Rule 45 and ultimately applying the work product doctrine to exclude certain materials); *Kaufman v. Medina County Clerk of Courts*, No. 13-1261, 2014 U.S. Dist. LEXIS 33389, *10-13 (N.D. Ohio Mar. 14, 2014) (unpublished) (also relying exclusively on Rule 26 without addressing the legal standards in Rule 45).   Neither of these cases have ever been relied upon or even cited by subsequent decisions on these issues. At least one court specifically refused to follow *Kauffman* because of the decision's failure to analyze the issue under Rule 45.   *See Lawrence*, 2015 U.S. Dist. LEXIS 194455, at *9-10 & n. 7.

*California*, 880 F.3d at 483 n. 7; *Nat'l Ass'n of Criminal Defense Lawyers*, 844 F.3d at 250; *American Oversight*, 45 F.4th 579; *Gilmore*, 564 N.W.2d at 164.  There is no requirement that a prosecutor working on a criminal matter must also face the prospect of actual or future civil litigation before attorney work product doctrine applies.

Second, a prosecutor has a legal and ethical duty to evaluate whether claims that new and/or additional evidence not known at the time of a criminal trial undermine the integrity of a prior conviction.  Indeed, Michigan law imposes independent legal duties upon prosecutors to: (1) ensure that past criminal convictions retain their integrity; (2) evaluate credible evidence that may undermine those prior convictions; and (3) take appropriate legal action if convincing evidence of innocence exists.  *See* Mich. R. Prof. Conduct 3.8(f) & (g).[6]  "The law is clear that a prosecutor's fundamental obligation is to seek justice, not merely to convict." *People v. Pfaffle*, 632 N.W.2d 162, 167 (Mich. Ct. App. 2001); *Keywell & Rosenfeld*

---

[6]  MRPC 3.8(f) ("When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant is innocent of the crime for which the defendant was convicted, the prosecutor shall: (1) promptly disclose that evidence to an appropriate court or authority, and (2) if the conviction was obtained in the prosecutor's jurisdiction, (i) promptly disclose that evidence to the defendant unless a court authorizes delay, and (ii) undertake further investigation, or make reasonable efforts to cause an investigation, to determine whether the defendant is innocent of the crime"); MRPC 3.8(g) ("When a prosecutor knows of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction is innocent of the crime for which defendant was prosecuted, the prosecutor shall seek to remedy the conviction").

*v. Bithell*, 657 N.W.2d 759, 792 (Mich. Ct. App. 2002) ("A lawyer is bound by the Michigan Rules of Professional Conduct"). Therefore, attorney opinion work product generated in connection with these legal duties are necessarily in "anticipation of litigation," with that possible "litigation" involving the prosecutor's obligation to evaluate the evidence and take the appropriate legal action if necessary. These efforts are conceptually no different from the protected opinion work product generated in deciding whether to seek charges against a suspect at the beginning of a potential criminal case, one which may or may not ever be brought. *See, e.g.*, *King*, 2014 Mich. App. LEXIS 1418, at *9-10; *Lemoine*, 2018 Mich. App. LEXIS 2829, at *12-16 (both holding that the work product doctrine protected the prosecutor's legal analysis of whether to seek charges for an individual for a crime).

Third, even if a court filing were required before the opinion work product doctrine could apply, as explained above, in connection with the initial request for WCPO review, Plaintiff's attorney presented a motion that he presumably intended to file in the state court case, containing his claimed bases for relief and proffered evidentiary support.  (Exhibit 4, Newman Decl. ¶ 2).  Thus, there was presumably a "real" possibility that if the WCPO did not investigate Plaintiff's claims that additional evidence undermined the integrity of his 1987 conviction, he would have sought a judicial resolution of these issues.

Fourth, even if the prospect of "civil litigation" were the only relevant consideration, because it is frequent, likely, and foreseeable consequence of a state court's decision to vacate a conviction, a prosecutor's work on a criminal matter is necessarily "in anticipation of litigation" in that regard.  Indeed, Magistrate Judge Patti found that the likelihood of civil litigation resulting from a vacated state court criminal conviction satisfies the "anticipation of litigation" prong.  (Exhibit 2, 9/19/22 Order at 3).

Fifth, to accept Defendants' position that a prosecutor office's internal memoranda, generated for the purpose of analyzing the integrity of an extant criminal conviction, are essentially "public documents" would have a profound impact on these activities, produce a profound "chilling effect" on a prosecutor's legal duty to ensure that justice has been done in a particular criminal case, and essentially carve out a significant exception to the established scope of opinion work product protections for prosecutors that already exist under both federal and Michigan state law.  These important policy justifications not only apply to in this matter and others but are of significant concern to other prosecutor offices engaged in similar work.  The *amici* brief filed in the *Marvin Cotton* case on behalf of the Counties of Macomb, Oakland, and Washtenaw, and the Michigan Attorney General makes this clear.  (Exhibit 11, *Amici* Brief in *Cotton v. Hughes*).

16

Finally, the WCPO does not understand and disagrees with Defendant's statement that the former has "refused" to turn over factual materials generated "after" December 6, 2019.  The WCPO produced numerous documents evidencing third party communications dated after the conviction was vacated.  (Exhibit 9). Furthermore, it is not clear how or why Defendant's position is relevant to the work product analysis.

Therefore, because the withheld materials satisfy both prongs of the opinion work product analysis, Rule 45 permitted the WCPO to withhold protected materials.

**B.     The WCPO Did Not "Waive" its Opinion Work Product Protections Regarding its Work on Plaintiff's Criminal Matter.**

Although there has been no waiver of the opinion work product protections here, Defendants appear to argue that because certain internal WCPO correspondence was either produced to the Michigan Department of Attorney General (in connection with Plaintiff's state court WICA case) or in this case, all work product privileges are irrevocably and universally waived.  This is not the law, and no waiver occurred.

A waiver of an attorney client privilege or work product protections only extends to the "same subject matter."  *See* Fed. R. Evid. 502(a)(2); *In re King's Daughters Health Sys.*, 31 F.4th 520, 527 (6th Cir. 2022) (recognizing that any waiver only extends to the "same subject matter").  The burden for demonstrating

waiver of attorney work product falls exclusively upon the party seeking the information. *See Ecuadorian Plaintiffs v. Chevron Corp*., 619 F.3d 373, 379 (5th Cir. 2010); *American Oversight*, 45 F.4th 579, 2022 U.S. App. LEXIS 22720, at \*26. As recently summarized by Judge Cleland in rejecting a claim that a partial waiver constituted a complete waiver:

> Once the privilege is waived, waiver extends to all information "that clearly pertain[s] to the subject matter of the specific points on which [the] waiver . . . occur[ed]." In determining the scope of a waiver, the court "must be guided by fairness concerns:" "[R]ealizing that fairness is at the heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly."

*Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 703-04 (E.D. Mich. 2021) (citations omitted) (ultimately concluding that the scope of the waiver was limited to the subject matter of a single email and did not constitute a broad waiver for other matters related to the case).

Defendant fails to carry his burden. Nothing in Exhibit 19 or 21 supports a clear and complete "waiver" of all opinion work product protections that attach to the redacted portions of the internal WCPO legal memorandum or its internal analysis of Plaintiff's criminal case. In Exhibit 19, the August 19, 2019 email communicates no mental impressions or attorney thought process regarding Plaintiff's criminal case. The balance of Exhibit 19 contains correspondence involving the WCPO and third parties – none of which reveals attorney opinion work product regarding Plaintiff's criminal case. Exhibit 21 similarly contains

18

correspondence that either simply involved third parties on routine communications and/or does not reveal the attorney opinion work product withheld from the subpoena response.

Therefore, Defendant has failed to carry his burden that a complete waiver of all attorney opinion work product protections occurred.

## C. In the Alternative, WCPO Opinion Work Product Is Irrelevant to the Determination of any Fact or Legal Issue in This Case.

In the alternative, the unredacted memorandum is completely irrelevant to determining any factual or legal issue in this case. "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mutual Automobile Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016); *Waskul v. Washtenaw County Community Mental Health*, No. 16-10936, 2021 U.S. Dist. LEXIS 209859, *10-11 (E.D. Mich. Oct. 31, 2021) (unpublished).

The facts to be litigated in this case involve whether Defendant intimated witnesses and falsified witness testimony that led Plaintiff's 1987 criminal conviction. The WCPO's opinion work product (opinions, mental impressions, and/or legal analysis) regarding the integrity of that conviction, in an investigation conducted over 30 years after the operative facts of the lawsuit occurred, cannot make any fact at issue in this case more or less likely. The opinion work product contains no first-hand or any personal knowledge of the operative facts of this case.

To the extent that in the course of the investigation, the WCPO generated and collected factual information, that information has been turned over to the parties without objection.

Indeed, on the relevancy issue, Magistrate Judge Patti recently determined that the WCPO's legal analysis of the integrity of a conviction was not relevant to the determination of any facts at issue in the *Smith* § 1983 wrongful conviction case. (Exhibit 1, 9/16/22 Hrg. Tr. at 41-42). Another court in the Sixth Circuit determined that a non-party prosecutor's opinion work product shed no light on whether the facts asserted by the plaintiff or defenses asserted by a defendant:

> [T]he Court finds that it does not need to address whether the work product privilege is applicable or whether Movants waived the privilege by producing their prosecutorial file. Here, the Court agrees with Movants that the crux of Plaintiff's claim is that Defendants maliciously prosecuted him by misrepresenting and omitting facts, which led to an indictment. Any inquiries into the impressions, opinions, mental processes, or legal theories of Movants, who are not parties, are simply irrelevant.

*See Crowley v. Anderson County*, No. 17-169, 2018 U.S. Dist. LEXIS 232175, *7-8 (E.D. Tenn. May 7, 2018) (unpublished)) (footnote omitted). Similarly, the Second Circuit has recognized that testimony from prosecutors regarding the facts of the case for which they have no personal knowledge, the credibility of witnesses, or whether probable cause existed are "irrelevant" to a § 1983 claim of wrongful prosecution against police officers and constitutes error if a jury is permitted to hear and consider such testimony. *See Cameron v. City of New York*, 598 F.3d 50, 65-67

20

(2d Cir. 2010) ("[P]rosecutors' opinions as to probable cause and complaining officers' credibility are irrelevant in virtually all cases involving claims of malicious prosecution. In such cases, district courts remain bound by the rules of evidence that normally govern opinion testimony, and accordingly the District Court erred in allowing Peterson and the prosecutors to testify to the officers' credibility and to the existence of probable cause").

To the extent that Defendant would argue that the "reasons" for the Michigan state court's vacating of the dismissal are somehow relevant to determining the truth or falsity of whether he violated Plaintiff's constitutional rights in 1987, the Supreme Court held that for the purposes of a federal civil rights claim, the reason(s) why criminal proceedings were terminated is irrelevant to the "favorable termination" element of a malicious prosecution claim. *See Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022) ("[W]e hold that a Fourth Amendment claim under §1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction").

Thus, the Michigan state court's 2019 dismissal of the criminal case or the circumstances surrounding the dismissal – for whatever legal reason or even if for no reason – is irrelevant and provides neither a factual nor a legal defense to the claims of police misconduct that occurred in 1987.  Furthermore, any testimony

21

containing opinion work product would not be admissible at trial as: (1) the opinion work product contains no personal knowledge of the operative facts of the fact; and (2) it would essentially constitute impermissible "lay expert" testimony that cannot and does not aid the jury's exclusive duty in determining whether any disputed fact at issue occurred or did not occur in 1987.  In other words, because neither Plaintiff nor Defendant can permissibly use the WCPO's 2019 legal opinions about the state court criminal case before a jury to "bolster" or "detract" from either side's claims and/or defenses, the lack of relevance provides an alternative basis to deny Defendant's motion.

**D.      The Privilege Log is Not "Inadequate." The WCPO Is Willing to Provide the Materials Withheld From the Subpoena Response for an In Camera Review.**

To the extent that Defendant claims that the July 26, 2022 amended privilege log is "inadequate," this contention also lacks merit.  Rule 45(e)(2)(A) provides that a subpoena recipient claiming a disclosure protection must: (1) make the claim of protection; and (2) provide sufficient information regarding the nature of the withheld information so that the parties can "assess" the claim.  The items on the WCPO privilege log identify: (1) the document type; (2) the "to" and "from" of internal correspondence; (3) the date of the document (if known); (4) the author of the document; (5) the recipient of the document; and (6) the claimed protection.  (ECF 56-16).  The document on the privilege log generally fall into the categories

of: (1) internal correspondence among the WCPO staff about the investigation; (2) drafts of final documents; (3) attorney documents that were created to aid in the investigation and legal analysis; and (4) LEIN information (Michigan state law strictly governs the disclosure of such information).   Revealing any more information on the privilege log would have risked "revealing information itself privileged or protected."  Fed. R. Civ. P. 45(e)(2)(A)(ii).

In any event, the usual remedy for an allegedly "insufficient" privilege is the provision of a more detailed one; and it does not result in the waiver of any work product protections.  To avoid any doubt, the WCPO is willing to provide copies of the withheld materials for an *in camera* review by the Court.

**E.     The WCPO Has Complied With Its Obligations to Produce Factual Information in Its Possession and Would Produce Any Remaining Items, If They Exist and Are in Its Possession and Control.**

To the extent that Defendants claim that certain non-protected documents have not been turned over, this is untrue.  Putting aside the protected opinion work product material, the WCPO addresses each claimed item in turn:

| Defendant Demand | WCPO Response |
|---|---|
| Plaintiffs' motion to the CIU/motion made for exoneration | This specific document does not exist. Defendant has in his possession Mr. Radner's draft state court motion on Plaintiff's behalf. |
| Plaintiffs' petition to the CIU | This specific document does not exist. Plaintiff did not submit a formal petition. |

| Correspondence with Claudia Whitman | The WCPO has produced the third-party correspondence that is in its possession, which included several emails to/from Whitman. The WCPO files do not contain any additional correspondence to/from Ms. Whitman. |
|---|---|
| Exhibits Admitted at Trial | The WCPO does not have in its possession the original exhibits as the original trial file could not be located. The WCPO already informed Defendant of this. These documents are presumably available from the public court file. |
| Derrick Andrews Interview | The WCPO does not possess an audio recording of an interview of Derrick Andrews |
| Casey Rose Recorded Interview | The WCPO believes that this was already produced. In case it was not, it can be re-sent. |
| Clara Hill Recorded Interview | The WCPO believes that this was already produced. In case it was not, it can be resent. |
| Ken Myree's Recorded Interview of DuShawn Flowers | The WCPO does not have a copy of this recording in its possession. Ken Myree does not work and has not worked for Wayne County. Any such recording can be presumably obtained from him. |

(Exhibit 4, Newman Decl. ¶ 5).

Therefore, to the extent that Defendant's motion seeks other factual materials, either: (1) the WCPO has already produced the information and will resent if for some reason it was not received; (2) the WCPO does not have a copy of the information sought in its possession; or (3) the information appears to be in the possession of third parties who themselves can be subpoenaed (indeed, Defendant

24

has not claimed that he had been unable to seek records, for instance, directly from either Mr. Myree or Mr. Radner).  As a result, Defendant has no basis to seek an order to show cause for these materials.

**CONCLUSION**

For the foregoing reasons, the WCPO respectfully requests that the Court deny Defendant's motion to show cause or alternative quash the subpoena in pertinent part.

Dated: September 23, 2022                    Respectfully submitted,

By: /s/ *Davidde A. Stella*
Davidde A. Stella (P69948)
Assistant Corporation Counsel
James W. Heath
Wayne County Corporation Counsel
500 Griswold St., 30th Floor
Detroit MI 48226
(313) 224-5030
dstella@waynecounty.com

*Attorneys for Non-Party the Wayne County Prosecutor*

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2022, I filed the *foregoing*, along with this *Certificate of Service* with the Clerk of the Court via the court's electronic filing system which will send notice to all parties.

*/s/Susan Sweetman*
Paralegal