**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANNY BURTON, *et al*.,

Plaintiffs,

Case No. 2:20-cv-11948

v.

Hon. Brandy R. McMillion
United States District Judge

HENRY WINEMAN, III as the
Personal Representative of the
ESTATE OF RONALD SANDERS,

Defendants.
_________________________________ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 150, 151, 152)**

Plaintiffs, Danny Burton ("Burton"), Paul Young ("Young"), and David Owens ("Owens"), commenced their respective civil lawsuits between 2020 and 2024, against former Detroit Police Department ("DPD") sergeant, Ronald Sanders ("Defendant" or "Sanders") for violating their constitutional rights when Sanders allegedly fabricated evidence against them which resulted in criminal convictions for the murder of Leonard Ruffin ("Ruffin"). Their now-consolidated federal civil rights action, filed pursuant to 42 U.S.C. § 1983, alleges that Sanders specifically violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments

when he fabricated evidence resulting in a malicious prosecution against them. *See generally* ECF No. 117; *see also* ECF No. 134. Additionally, Young and Owens bring claims for Intentional Infliction of Emotional Distress (IIED) against Sanders. *See* ECF Nos. 160, 161. Defendant now seeks summary judgment under Federal Rule 56 based on evidentiary grounds, the merits of each claim, or, alternatively, his entitlement to qualified immunity. *See* ECF Nos. 149–152. The Motions have been adequately briefed, and the Court finds that oral argument is not necessary. *See* ECF Nos. 149, 150, 151, 152, 156, 157, 159–164; E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.

In May 1987, the Detroit Police Department investigated the murder of Leonard "Lenny" Ruffin. ECF No. 149, PageID.2392. The investigation began with Officers James Ochmanski and Thomas Goralski.[1] The day after Ruffin was murdered, Deandre Bolden ("Bolden") voluntarily provided a witness statement to DPD. ECF No. 156, PageID.4734. Shortly thereafter, then-sergeant Sanders became involved as "the officer in charge of investigating Lenny's murder." *Id.* at

[1] According to Plaintiffs, before Sanders became involved in the investigation, Ochmanski and Goralski "talked with the five people that were inside the house [b]ut no statements were collected nor were there any arrests made. [They] didn't take any photographs, use evidence markers or measuring tools when they collected the bullet casings and glasses." ECF No. 156, PageID.4729 (cleaned up).

PageID.4728, 4730. Sanders acquired initial witness statements from Felicia Gilchrist ("Gilchrist"), Alfreda Jackson ("Jackson"), Clara Hill ("Hill"), Rochelle Thompson ("Thompson"), and Bolden. ECF No. 149, PageID.2390; ECF No. 156, PageID.4730. Armed with these statements, Sanders obtained a search warrant for "the Linsdale House." *Id.* at PageID.4730. The Linsdale House was a "drug house at 5299 Linsdale [which was used] as part of a larger drug conspiracy spearheaded by the infamous Chambers Brothers." ECF No. 149, PageID.2391. Plaintiffs began working at the Linsdale House months preceding Ruffin's murder. ECF No. 156, PageID.4732.

Sanders' search warrant affidavit "included the accounts given by DeAndre, Diane, and Calvin to Officer Jones as well as DeAndre's and Diane's individual witness statements[.]" ECF No. 156, PageID.4730. Officers executed the search warrant at the Linsdale House and arrested the individuals they found in the home. *Id*. At a later time, Gilchrist, Jackson and Lula Gilchrist ("Lula") (Felicia Gilchrist's mother) were arrested. *Id*. Each of them ultimately provided Sanders with written statements a couple days after the execution of the search warrant, and days later, Sanders obtained arrest warrants for Plaintiffs. *Id.* at PageID.4730-4731.

Following the arrests, several witnesses provided additional statements to Sanders—the voluntariness of which is disputed by the parties. For example, Defendant maintains that, taken together, Bolden, Gilchrist, Jackson, Lula, Hill, and

Thomas provided sufficiently reliable testimony which properly resulted in Plaintiffs' criminal prosecutions. ECF No. 149, PageID.2394-2406. Accordingly, for Burton and Young's consolidated criminal cases, "[t]he prosecution called medical examiner Suwait Kanluen, Ruffin's aunt Zelda McRae, Felicia, Lula, Von, Deandre, Alfreda, Ruffin's girlfriend Diana Shadwick, Officer Ochmanski, Officer Franklin, Sanders, and Officer Dale Johnston." *Id.* at PageID.2401. The defense did not call any witnesses, including Hill, despite Burton's claims that Hill was his alibi witness. *Id.* At Owens' trial, "the prosecution called Ruffin's girlfriend Diana Harris, medical examiner Lubisa Dragovic, Felicia, Casey, Lula, Alfreda, Officer Ochmanski, Officer Fountain, and Sanders. The defense called no witnesses." *Id.*

Plaintiffs, on the other hand, insist that Sanders fabricated and coerced most, if not all, of the witnesses' statements, which ultimately resulted in their criminal convictions. ECF No. 156, PageID.4734-4745. For instance, Plaintiffs allege that,

- More than a month after giving his first statement, Bolden was arrested with Danny on June 12, 1987 and forced to give a second statement to Sanders. Years later in 2010, Bolden attested that Sanders had punched and threatened him to falsely implicate the Plaintiffs. ECF No. 156, PageID.4734-4735.
- Before ultimately succumbing to AIDS in 2010, Felicia Gilchrist recanted all of her testimony accusing the Plaintiffs of Lenny's murder. *Id.* at PageID.4735.
- When Alfreda Jackson later recanted her trial testimony, she explained that she was high on crack when Sanders told her to sign the statement he wrote. *Id.* at PageID.4737.

- Between 2005 and 2007, both Lula and Felicia consistently identified Sanders as the source of threats in multiple affidavits that recanted their respective testimony against the Plaintiffs. *Id.* at PageID.4738.
- Sanders would not accept that Clara Hill was with the Plaintiffs when Lenny was killed and had nothing to do with his murder. *Id.* at PageID.4739.
- Rochelle Thompson, who was 17 in 1987, was initially put in the same DPD interrogation room with Clara Hill. And after Hill was taken into a different room, Thompson overheard a smack and Hill crying. ECF 149-26.

In any event, each of the plaintiffs was convicted of Ruffin's murder. *See* ECF No. 149, PageID.2406; ("Burton and Young were found guilty of first-degree murder under an accomplice theory and guilty of possession of a firearm during the felony; they were sentenced to life in prison without the possibility parole for first-degree murder. Burton also received a mandatory two-year sentence for a firearm conviction." "Owens was found guilty of second-degree murder and guilty of possession of a firearm in the commission or attempt to commit a felony and was sentenced to a term of 25-50 years and two years on a felony firearm charge."); *see also* ECF No. 156, PageID.4745. Decades later, the Wayne County Conviction Integrity Unit recommended that all the convictions be set aside, a recommendation which the Wayne County Prosecutor's Office ultimately stipulated. ECF No. 149, PageID.2408. Before their convictions were vacated, Burton had been incarcerated for 32 years, Young for 29 years, and Owens for 24 years. ECF No. 156, PageID.4728.

In July 2020, Burton commenced this Section 1983 lawsuit against the City of Detroit.[2] ECF No. 149, PageID.2408. Three years later, Young filed a similar lawsuit, and then, in February 2024, Owens followed suit. *Id.* at PageID.2409. In August 2023, Sanders passed away and Henry Wineman III was appointed as the Personal Representative of Sanders' estate. *Id.*; *see also* ECF No. 109. In June 2024, the cases were consolidated. *See* ECF No. 133.

This matter was originally assigned to the Honorable Paul D. Borman. *See* ECF No. 3. On June 27, 2024, it was reassigned to the Undersigned, and this Court referred all pretrial matters to Magistrate Judge David R. Grand. *See* ECF No. 135. On December 17, 2025, Defendant filed Motions for Summary Judgment against Burton, Owens, and Young (ECF No. 150, 151, 152); *see also* ECF No. 149. The Motions have been adequately briefed. *See* ECF Nos. 149, 150, 151, 152, 156, 159–164. Therefore, the Court finds that oral argument is not necessary so it will rule based on the record before it. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated herein, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

## II.

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court will evaluate the

[2] On January 19, 2021, the Court dismissed the City of Detroit. *See* ECF No. 20.

motion to determine "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Accordingly, the nonmoving party must "'present significant probative evidence' putting the material facts in doubt." *Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit*, Mich., 63 F.4th 521, 526 (6th Cir. 2023)). The Court will "view[ the facts] in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

At the summary judgment stage, when qualified immunity is raised, the court must incorporate the standard into its analysis. *Scott*, 550 U.S. at 378. "Qualified immunity protects an official from liability if the official's conduct does not violate 'clearly established' statutory or constitutional rights that a reasonable person would have known were in existence." *Peterson v. Heymes*, 931 F.3d 546, 553 (6th Cir.

2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity at this stage, a § 1983 plaintiff must demonstrate that (1) the defendant violated a constitutional right; and (2) that the right was clearly established at the time of the alleged violation. *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 2013).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The court may decide which prong of the qualified immunity analysis to address first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If there is no dispute that plaintiff's right was clearly established, the Court need not reach the constitutionality of the conduct itself. *Id*. at 236-43.

**III.**

Defendant seeks dismissal of all Plaintiffs' claims in this case. First, under the theory that Sanders is entitled to qualified immunity; and further arguing that Plaintiffs have no admissible evidence that would support their claims. Because Plaintiffs' cases have been consolidated and the claims brought by each overlap, the Court will address the claims under theory of liability.

**A. Admissibility of Evidence**

As a threshold matter, Defendant asserts that Plaintiffs cannot prove any of their claims because the evidence which they rely on is either inadmissible or does

not support their claims. Defendant asserts that the affidavit of Lula Gilchrist confirms she was not coerced by Sanders, nor did he falsify her witness statement or testimony. ECF No. 150, PageID.4388. Defendants further argue that the statements of Clara Hill were known to the defense at the time of trial and therefore do not support any claim that exculpatory information was withheld. *Id.* Additionally, Defendant notes that the Court has ruled that the affidavits/statements of Alfreda Jackson, Andrew "Von" Williams, and Deandre Bolden cannot be used to oppose summary judgment. *Id.* Which leaves only the affidavit of Felicia Gilchrist, which Defendant argues is inadmissible hearsay and no hearsay exceptions apply. *Id.*

As Defendant correctly states, without a proper exception, Gilchrist's testimony is hearsay and not admissible at trial because she is now unavailable (deceased) and Plaintiffs would seek to admit her testimony for the truth of the matter asserted. *See* ECF No. 150, PageID.4391-4405; ECF No. 151, PageID.4556-4557; ECF No. 152, PageID.4636-4637; *see also* Fed. R. Evid. 802, 804(a)(4); *see also Davis v. Washington*, 547 U.S. 813, 833 (2006). Despite this, Plaintiffs argue that Gilchrist's affidavits are admissible under the exceptions set forth in Fed. R. Evid. 804(b)(3) and 807. *See* ECF No. 159, PageID.5178-5179; ECF No. 160, PageID.5256; ECF No. 161, PageID.5299.

Under Fed. R. Civ. P. 804(b), a statement is not "excluded by the rule against hearsay if the declarant is unavailable as a witness" and the at-issue statement is one that:

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability[.]

Fed. R. Evid. 804(b)(3).

Defendant's response to Plaintiffs' arguments that Rule 804(b)(3) applies is somewhat unclear. First, Defendant contends that Gilchrist's testimony is not a statement against interest. ECF No. 150, PageID.4393. Yet immediately thereafter, Defendant urges that "even if the Court were to admit Felicia's Affidavits under Rule 804(b), the Court may **only admit** the **portions** of Felicia's statements **actually against interest, admitting that she lied**, not why she lied." ECF No. 150, PageID.4395 (emphasis added). The two positions are irreconcilable because if any portion of Gilchrist's statement qualifies as a statement against interest, then Rule 804(b) applies. So, Defendant effectively concedes that the statement falls within the exception by acknowledging that a portion of Gilchrist's statement consists of her "admitting that she lied" when she testified against Plaintiffs. *Id.* And there is no doubt that admitting to lying under oath could have subjected Gilchrist to perjury

charges or a civil suit from Plaintiffs. *See Beckett v. Ford*, 384 F. App'x 435, 444 (6th Cir. 2010).

The Court's inquiry however does not stop there. In assessing the admissibility of Gilchrist's affidavit, the Court must also consider if the narrative is admissible in its entirety. Defendant argues that the Court should only admit the portions of the affidavit that are the actual statements against interest – "admitting that she lied, not why she lied." ECF No. 150, PageID.4395 (citing *Beckett*, 384 F. App'x at 444). Plaintiffs disagree, arguing that Gilchrist's "narrative as a whole, including the explanation that Sanders was able to threaten her because of her own criminal activity, all goes against Felicia's interest and is thus admissible." ECF No. 159, PageID.5179. The Court is not persuaded.

Plaintiffs argue that "by explaining why she lied and was scared of Sanders, Felicia was not helping herself but was further inculpating herself (by admitting she was at a drug house, that Ruffin delivered drugs to her, and that she was worried that she could face prosecution or lose her children if she didn't comply with Sander's orders). *Id.* However, none of these facts actually subject her to any form of liability – criminal or civil. Instead, like another judge in this district found, the explanation of why prior testimony was perjured, is actually "an attempt to mitigate or negate the wrongfulness of the prior perjury, and thus the explanation actually supports the declarant's interest in avoiding or limiting any criminal punishment" not further

inculpate them. *See Siggers v. Alex*, No. 19-cv-12521; 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021).

The Court therefore finds that Gilchrist's affidavit is admissible under Rule 804(b)(3), but only the portions that admit Gilchrist's prior testimony was false; not why that testimony was false.[3]

**B. Fabrication Claims**

Plaintiffs allege that Sanders violated their Fourth Amendment rights when Sanders "fabricated evidence [against them that] was also material to a finding at trial of guilt beyond a reasonable doubt that Plaintiff[s] had committed the crime, and this burden would otherwise not have been satisfied." ECF No. 117, PageID.2117. Defendant contends that he is entitled to summary judgment on this claim because Plaintiffs cannot meet their burden of proof, or, alternatively, based on qualified immunity. ECF No. 150, PageID.4405-4409.

"Fabrication of evidence claims require two showings: one, that evidence was knowingly fabricated; and two, that it is reasonably likely that the fabricated evidence affected the jury's decision." *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 723 (6th Cir. 2023) (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)). Here, Defendant asserts that there is no admissible evidence

[3] Having found that Gilchrist's affidavit amounts to a statement against interest, the Court need not reach the question of whether any other hearsay exception applies, such as Fed. R. Evid. 807.

that Sanders knowingly fabricated evidence by coercing witness statements. As discussed, the only admissible evidence from Felicia Gilchrist is the fact that she lied, but as the Court discussed, the reason why she lied (because Sanders coerced or pressured her to make the false statements) is inadmissible. *Beckett*, 384 F. App'x at 444; *see also Siggers*, 2021 WL 4391170 at *14. Similarly, any statement from Lula Gilchrist would be subject to the same hearsay analysis. Despite Defendant arguing that Lula's statement supports that Sanders did not "coerce or otherwise fabricate her testimony," *see* ECF No. 150, PageID.4406, it too would qualify as hearsay because she is unavailable (deceased) and it is offered for the truth of the matter asserted. Unlike Felicia's statement, Lula's statement is not subject to any hearsay exception and therefore is inadmissible. Additionally, the parties have stipulated that the recantations of Von Williams, Alfreda Jackson, and Deandre Bolden will not be used in support of or in opposition to a motion for summary judgment, so that evidence is also inadmissible. *See* ECF No. 130.

The only evidence Plaintiff can provide, other than their own statements, is the fact that Felicia perjured herself. Without more, the Court finds Plaintiffs fail to show that Sander's knowingly fabricated evidence. *Price*, 72 F.4th at 723; *Jackson*,

925 F.3d at 815. Defendant is, therefore, entitled to summary judgment on the claim that Sanders fabricated evidence by coercing witness statements.[4]

### C. *Brady* Claims

Defendant next contends that Plaintiffs' *Brady* claims cannot defeat summary judgment because "there is no Brady violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information or if the information was available to him from another source." ECF No. 150, PageID.4405 (citing *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014)). But according to Plaintiffs, Sanders failed to fulfill his duty under *Brady* when he did not "disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, including, but not limited to, the evidence that he willingly suppressed, such as Clara Hill's and other witnesses' testimony that indicated Mr. Burton was not guilty of the crime." ECF No. 117, PageID.2114; *see also* ECF No. 160, PageID.5257-5261; ECF No. 161, PageID.5300–5304. The Court agrees with Defendant that there is no genuine dispute of material fact that Sanders did not commit a *Brady* violation.

It is longstanding Sixth Circuit law that "[t]here is no Brady violation where the defense knew or should have known of the exculpatory information, or where

[4] Having found that summary judgment is proper in favor of Defendant on the merits of the Fabrication of Evidence claims, the Court need not reach a decision on whether Sanders is entitled to qualified immunity for those claims.

the disputed evidence was available from another source." *Hall v. Russell*, 339 F. App'x 576, 578 (6th Cir. 2009) (citing *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)). Such is the case here, and a reasonable jury could not find otherwise. Burton asserts that Sanders violated their due process rights by withholding Hill's witness testimony that Burton was not guilty of the murder of Ruffin. ECF No. 159, PageID.5192. At the same time, "Plaintiffs admit that Clara was the alibi for Dave and Danny as well as Paul." ECF No. 156, PageID.4741. This admission undermines Plaintiffs' own *Brady* claims. Plaintiffs cannot contend that Defendant violated their due process rights by failing to disclose evidence to which their counsel already had access—or, at a minimum, should have had access.

Hill was not called as a witness to testify at trial. ECF No. 150, PageID.4388. However, Plaintiffs assert she was their "alibi" witness. ECF No. 149-25, PageID.3518-3519. If true, then Plaintiff's themselves would have known that essential fact to their defense. But the record before the Court also suggests that defense counsel at the time knew of Hill and made a strategic litigation decision not to call her as a witness. *Id.* at PageID.3525, 3540.

Summary Judgment in favor of Defendant on Plaintiffs' *Brady* claims is therefore proper; and those claims are subject to dismissal.

### D. Malicious Prosecution Claims

Defendant also moves for summary judgment on Plaintiffs' malicious prosecution claims by arguing that they cannot prove that "Sanders […] 'deliberately and knowingly presented fabricated evidence to create probable cause.'" ECF No. 150, PageID.4410 (quoting ECF No. 117, PageID.2116). Plaintiffs seek to rebut Defendant's argument by asserting that there are outstanding disputes in this case about "whether there was probable cause in support of Plaintiff[s'] prosecution[,]" such that summary judgment would be improper. ECF No. 159, PageID.5197; *see also* ECF No. 160, PageID.5263-5266; ECF No. 161, PageID.5306-5309.

Under Sixth Circuit precedent, there is "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment [which] encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (cleaned up) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). To succeed on their § 1983 malicious prosecution claims, Plaintiffs must show that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceedings were resolved in the

plaintiff's favor. *See id.* at 308-309. The parties appear to agree that whether this claim survives summary judgment turns on the second element—probable cause.

*i. Collateral Estoppel*

Before addressing the merits, in advancing his argument for summary judgment, Defendant begins by asserting that Plaintiffs cannot "relitigate" probable cause. In particular, he claims that Plaintiffs are "precluded from collaterally challenging the judicial determination of probable cause at the preliminary examination[s]." ECF No. 150, PageID.4410; *see also* ECF No. 151, PageID.4562-4565; ECF No. 152, PageID.4644-4657. Collateral estoppel applies when: "(1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel." *Calhoun v. Kane*, No. 2:24-cv-10184, 2026 WL 825335, at *14 (E.D. Mich. Mar. 25, 2026) (citing *Peterson*, 931 F.3d at 554).

Defendant's position is squarely foreclosed by the fact that "[u]nder the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts are required to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so" and "**vacated rulings have no preclusive effect** under Michigan law." *Peterson*, 931 F.3d at 554 (emphasis added). Plaintiffs' convictions were vacated when the Wayne County Conviction Integrity Unit investigated their cases and the Wayne County Prosecutor stipulated to overturning

their convictions. ECF No. 149, PageID.2408. The rulings in those cases therefore do not retain any preclusive effect once the convictions were vacated.

Accordingly, Defendant would not be entitled to summary judgment on his collateral estoppel theory.

*ii. Probable Cause*

Defendant next proceeds by asserting that, because there was “at least arguable probable cause” supporting Plaintiffs’ state criminal convictions, Plaintiffs’ malicious prosecutions claims are meritless. *See* ECF No. 150, PageID.4413-4416; ECF No. 151, PageID.4565-4568; ECF No. 152, PageID.4647-4650. Plaintiffs request that the Court reserve any probable cause determination for the jury. *See* ECF No. 159, PageID.5198-5199; ECF No. 160, PageID.5266; ECF No. 161, PageID.5309. Defendant responds that the Court should instead resolve the issue of probable cause as a matter of law. ECF No. 162, PageID.5337; ECF No. 164, PageID.5362.

There is no question that “[p]robable cause is a ‘low bar.’” *Frenchko v. Monroe*, 160 F.4th 784, 796 (6th Cir. 2025) (quoting *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021)). “It ‘exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.’” *Id.* (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959); *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011)). The finding of probable cause can readily defeat a

malicious prosecution claim. *See Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014). However, the Court only makes that finding when material facts are not in dispute. "If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts." *See Alman v. Reed*, 703 F.3d 887, 896 (6th Cir. 2013); *see also Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) ("[A] jury trial is appropriate where reasonable disputes of material fact exist on facts underlying a probable cause determination. However, where only one reasonable reading of the facts is possible, i.e., where the facts that relate to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge.").

Here, this case is complicated by the fact that the parties have stipulated to exclude "any affidavits, interviews, or statements of any kind of Alfreda Jackson, Deandre Bolden, and Von Williams in support of or opposition to the motion for summary judgment" and have also agreed that they may not be called to testify at trial. ECF No. 130, PageID.2185-2186. With that backdrop, the only remaining facts in the record before the Court are Felicia Gilchrist's statement that she lied in her original statements implicating Plaintiffs, and Clara Hill's alibi statements that Plaintiffs were with her at the time of the murder.[5] The determination of whether

[5] Lula Gilchrist's statements would be excluded for the same reasons discussed *infra* (section III.A) – Lula is unavailable (deceased) and her statements are being offered for the truth and are therefore hearsay; and no hearsay exception applies.

that is sufficient to establish probable cause should be left to the jury where, as Plaintiffs aptly point outs,

> [i]f the jury were to believe Danny Burton, Paul Young, Felicia Gilchrist, Casey Rose, and more, then it is permitted to conclude that Ronald Sanders, knowing there was no probable cause, participated in the prosecution by causing false evidence to be created and then introduced in the prosecution. And again, there remains the possibility that the jury will ultimately conclude that Sanders didn't engage in the conduct alleged here.

ECF No. 159, PageID.5199. This is especially true where,

> even if an alibi might be dubious or self-serving, alibi-witness testimony can diminish the credibility of other witnesses. *Cf. Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006) (concluding that, where the prosecution's evidence was thin, failure to present alibi witnesses "undeniabl[y]" prejudiced the defendant). Each of the facts identified by the district court is highly relevant to the jury's determination whether an officer knew that the statement procured from a witness was false. *See Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012) (concluding that officers "may be held liable if they recklessly ignored evidence suggesting the Plaintiffs' innocence or systematically pressured witnesses to manufacture false testimony to fill gaps in an investigation").

*Clark v. Abdallah*, 131 F.4th 432, 449 (6th Cir. 2025).

The most basic facts such as whether Burton, Owens and Young were even present at the scene of Ruffin's murder remain disputed. Plaintiffs maintain that any probable cause for their prosecution arose from Sanders' own fabrication and coercion of evidence against them. *See supra* (Section III.B). And Defendant asserts

that there was other evidence that establish probable cause (e.g., independent, on-scene police observations—fresh blood, spent casings, and personal effects at Linsdale in the pre-dawn hours; Ruffin's body in a West Philadelphia alley; and Burton's blue Trans Am as the transport vehicle connected the crime). *See* ECF No. 163, PageID.5350-5351. Given these factual disputes, a judicial determination of probable cause would be improper. Therefore, summary judgment on this basis is not warranted.[6]

*iii. Qualified Immunity*

Having found that a jury, not this Court, must resolve whether there was probable cause to prosecute Plaintiffs, the Court must determine whether Sanders is nevertheless entitled to qualified immunity. ECF No. 150, PageID.4413-4416; ECF No. 151, PageID.4565-4568; ECF No. 152, PageID.4647-4650.

Noting that the Court can start with either prong of the analysis, the Court looks first to whether there was a clearly established constitutional right to be free from malicious prosecution through fabrication of evidence in 1987. Constitutional prohibitions against fabrication of evidence date back to 1935 when "the Supreme Court recognized that the introduction of fabricated evidence violates 'the

[6] The Court notes that even though it has found summary judgment in favor of Defendant on Plaintiff's fabrication of evidence claim, the malicious prosecution claim can still proceed. *See Clark*, 131 F.4th at 453 ("even if a jury concludes that the evidence was not fabricated, the jury could still find that 'there is an apparent reason for the officer to believe that [a witness] was lying' … and the jury could find that the testimony was not sufficiently reliable to establish probable cause.") (internal citation omitted).

fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Jackson*, 925 F.3d at 825 (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "And in 1942, the Supreme Court held that when a witness perjures himself because of threats from police officers, the defendant suffers 'a deprivation of rights guaranteed by the Federal Constitution.'" *Jackson*, 925 F.3d at 825 (citing *Pyle v. Kansas*, 317 U.S. 213, 216 (1942)). The Court therefore finds that in 1987 when Sanders was involved in the prosecution of Plaintiffs, any reasonable officer should have understood that fabricating evidence against a criminal defendant was a violation of their constitutional rights. In fact, this right is so fundamental that it lies at the core of the Fourth Amendment, further rendering it clearly established.

As for the second prong (was there a constitutional violation), the Court finds that viewing the facts in the light most favorable to Plaintiffs, which it must do, a reasonable jury could find that Plaintiffs' rights were violated. Several witnesses recanted their prior testimony that implicated Plaintiffs in the murder. Hill stated that Burton, Young and Owens were with her at the time of the murder. And if Plaintiffs were arrested based on fabricated and coerced probable cause, that would be a violation of their rights under the Fourth Amendment. *See Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997) (citing *Beck v. Ohio*, 379 U.S. 89, 90-91 (1964)).

Accordingly, genuine issues of material fact preclude granting Sander's summary judgment based on qualified immunity on Plaintiffs' Malicious Prosecution claims.

## E. Intentional Infliction of Emotional Distress

Owens and Young separately bring claims for IIED against Sanders. Sanders moves for dismissal based on governmental immunity, or, alternatively, because his alleged conduct was not extreme and outrageous and Plaintiffs did not suffer severe emotional distress. *See* ECF No. 151, PageID.4570-4574; ECF No. 152, PageID.4651-4657. Under *Odom v. Wayne Co.*, 482 Mich. 459, 461 (2008), the Court will grant a defendant governmental immunity if:

> (1) his challenged acts were undertaken during the course of employment and he was acting, or reasonably believed he was acting, within the scope of his authority;
>
> (2) the acts were undertaken in good faith, or were not undertaken with malice; and
>
> (3) the acts were discretionary, rather than ministerial in nature.

*Id.* (cleaned up); *see also Odom*, 482 Mich. at 471–472 ("Because subsection 3 [MCL 691.1407(3) of the GTLA] more specifically addresses 'intentional torts' and subsection 2 more broadly addresses 'tort liability,' subsection 3 must control in this case.") (reaffirming that *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984) governs governmental immunity for intentional tort claims).

The parties dispute whether Sanders acted with malice. According to Defendant, "Owens [and Young have] not and cannot point to admissible facts to establish that Sanders acted with malice toward [them] when he investigated [them] for the murder of Ruffin." ECF No. 151, PageID.4571; ECF No. 152, PageID.4654. The Court concludes otherwise. In fact, Plaintiffs' briefs are replete with allegations of exactly that: claims that Sanders acted with malice by fabricating and coercing evidence against them, which ultimately led to their criminal convictions. *See generally* ECF Nos. 160, 161.

"Unlike qualified immunity under federal law, which uses an objective standard, the good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011). That is to say, Sanders is entitled to governmental immunity if the Court finds no genuine dispute of material fact regarding whether Sanders honestly, and in good faith, believed that his actions did not constitute any wrongdoing. The Court makes no such finding. Resolution of those issues comes down to credibility determinations, which are not ripe for consideration at the summary judgment stage. *Anderson*, 477 U.S. at 255. The Court therefore declines to grant Sanders governmental immunity.

Finally, the Court finds Defendant's merit-based arguments regarding Owens and Young's IIED claims nonsensical. *See* ECF No. 160, PageID.5269-5270; ECF No. 161, PageID.5312-5313. Fabricating evidence is extreme and outrageous by every stretch of the imagination; so, too, is coercing witness testimony to secure criminal homicide convictions resulting in life in prison. Separately, a reasonable jury could most certainly find that spending nearly three decades in prison for a crime one did not commit constitutes severe emotional distress. The parties go back and forth about whether Owens and Young present sufficient mental health concerns to rise to the level of severity needed for an IIED claim to succeed. But the Court finds that is a question best left for the trier of fact to determine. Therefore, summary judgment is not proper on Owen and Young's IIED claims.

## IV.

Accordingly, Defendant's Motions for Summary Judgment (ECF Nos. 150, 151, 152) are **GRANTED IN PART** and **DENIED IN PART**. The Motions are **GRANTED** as to the Fabrication of Evidence and *Brady* Violation claims, and those claims are **DISMISSED WITH PREJUDICE**. The Motions are **DENIED** as to the Malicious Prosecution and Intentional Infliction of Emotional Distress claims, and those claims will proceed to trial.

**IT IS SO ORDERED.**

Dated: September 25, 2026
Detroit, Michigan

s/ Brandy R. McMillion
Hon. Brandy R. McMillion
United States District Judge